## MARK GIAMBRONE *vs.* TACIANA GIAMBRONE.

No. 90-P-1031.

Hampshire. September 5, 1991. - February 13, 1992.

Present: WARNER, C.J., PERRETTA, & JACOBS, JJ.

*Divorce and Separation*, Child custody, Foreign determination as to custody of child. *Jurisdiction*, Custody of child. *Probate Court*, Jurisdiction, Custody of child. *Parental Kidnapping Prevention Act. Child Custody Jurisdiction Act.*

A probate judge, having concluded that certain custody orders entered in Ohio, awarding custody of the parties' son to the father, were in conflict with an earlier outstanding order of a New York court placing custody of the child with the mother, correctly denied the father's complaint for enforcement of the Ohio orders, where the Ohio custody determinations were not made in substantial conformity with G. L. c. 209B, the Massachusetts Child Custody Jurisdiction Act, and were not consistent with 28 U.S.C. § 1738A (1988), the Federal Parental Kidnapping Prevention Act. [123-127]

This court concluded that, in the circumstances, a probate judge in Massachusetts should determine under G. L. c. 209B, § 7, whether New York viewed itself to be a certain child's home State for the purpose of taking jurisdiction over a custody dispute between the parents of the child and, if the judge so determined, whether New York would defer to Massachusetts to make a determination as to the child's custody pursuant to G. L. c. 209B, § 2(*a*) (2) or (4). [127-129]

COMPLAINT for enforcement of a foreign custody order filed in the Hampshire Division of the Probate and Family Court Department on October 4, 1988.

The case was heard by *Sean M. Dunphy*, J.

*Frederick U. Fierst* for Mark Giambrone.

*Colleen C. Currie* for Taciana Giambrone.

PERRETTA, J. By this appeal we are asked to decide whether Massachusetts must enforce orders which were entered in Ohio and which awarded custody of the parties' son to the father, Mark Giambrone (Mark). A Massachusetts

Probate Court judge determined that the Ohio orders were in conflict with an earlier outstanding New York order placing custody of the child with the mother, Taciana Giambrone (Taciana), and denied Mark's complaint for enforcement. Concluding that the Ohio custody determinations were not made in substantial conformity with G. L. c. 209B, the Massachusetts Child Custody Jurisdiction Act, and that they are not consistent with 28 U.S.C. § 1738A (1988), the Federal Parental Kidnapping Prevention Act (PKPA), we affirm the order denying the complaint.

1. *The New York and Ohio proceedings.* We recite the facts as they appear in the parties' stipulation and the various documents and decisions filed in the proceedings in New York, Ohio, and Massachusetts. After their marriage in Brazil in 1983, Mark and Taciana resided in Ohio. Each of the parties had relatives living in that State. They moved to New York in January, 1985, and their son, Cristian, was born there on September 14, 1985.

In January, 1987, Mark and Taciana separated. The parties have not stipulated but Taciana has alleged in Massachusetts pleadings that Cristian remained with her. In any event, the time interval appears to have been brief. Soon after the separation, Cristian was delivered to relatives in Ohio. Taciana went to Brazil to visit with her family, and Mark made preparations to relocate to Ohio.

Taciana returned to the United States on February 18, 1987. We have nothing to advise us of the place of her arrival. Two days later, Mark initiated divorce proceedings in New York and obtained an ex parte order granting him temporary custody of Cristian. A hearing was scheduled for March 3, 1987, pending service upon Taciana.

Prior to the scheduled hearing, Mark left New York, permanently, and went to Ohio. Through his attorney, he filed in New York a notice of discontinuance of his divorce action. It is the law of New York, N.Y. Civ. Prac. L. & R. § 3217 (McKinney 1992), that a party asserting a claim may discontinue it without judicial approval prior to service of a response to the claim or within twenty days after service of the

claim, whichever is earlier. On March 3, 1987, however, the New York judge refused to recognize the notice of discontinuance. She found that there was confusion on the point whether Mark's attorney, who served the notice upon Taciana on March 2, 1987, had earlier been shown by Taciana, who was acting pro se, a copy of her response. The judge scheduled an immediate hearing and, on March 4, she vacated her custody award of February 20, 1987, and ordered the parties to appear for a custody hearing on March 12, 1987.

As these events were occurring in New York, Mark, in Ohio, on March 3, 1987, filed a complaint for alimony only (referred to in Massachusetts as a complaint for separate support) and obtained a temporary order granting him custody of Cristian. Through counsel in New York, he also filed an appeal from the judge's refusal to recognize his notice of discontinuance and a request for a stay of the judge's orders pending that appeal. The Appellate Division denied the request for a stay.

On March 12, the New York judge proceeded with the scheduled custody hearing, made findings of fact (which are not in the materials before us), awarded temporary custody of Cristian to Taciana, scheduled another hearing for March 30, and ordered that "all parties and the child are to be present." Mark did not attend the March 12 hearing. On March 18, 1987, the clerk of the New York court forwarded a copy of the judge's decision and order to the clerk of the Ohio court with a letter requesting that the Ohio court, pursuant to the decision of the New York judge and the "provisions of the 'UCCJA' " (Uniform Child Custody Jurisdiction Act), enter an appropriate order for the appearance of Mark and Cristian in New York on March 30.

On April 1, 1987, the Ohio judge "relinquished" jurisdiction to New York, dismissed Mark's complaint for alimony only, and directed him to appear in New York on March 30, 1987. (Mark had not gone to New York for the hearing). Taciana then went to Ohio and, on April 15, filed a petition

seeking enforcement of the New York order of March 12. Mark filed a second complaint in Ohio for alimony only.

Taciana's petition was heard on May 5. Three days later, the judge entered the following orders. First, he accepted the New York order for filing, granted temporary custody of Cristian to Taciana, and ordered Mark to turn the child over to her. Next, and on his own motion, the judge stayed his orders, pending Mark's appeal from them, on the condition that Taciana be allowed visitation with Cristian. Finally, he ordered that Taciana not remove the child from Ohio. Taciana left Ohio on May 17, taking Cristian with her.[1]

On July 29, 1987, Taciana filed a counterclaim for divorce on Mark's complaint in New York, where his appeal from the judge's refusal to recognize his discontinuance was pending. Two days later, in Ohio, the judge heard Mark's second complaint for alimony only. Judgment on that complaint was entered on August 13, 1987, and it also provided that Mark was to have custody of Cristian. On November 16, 1987, Taciana was granted a divorce and custody of Cristian in New York, provided that she "settle a judgment," which was not done.[2] However, the order also provided that "[u]ntil such judgment is settled [and] signed, this [paper] shall constitute the decision and order of the Court awarding permanent custody of Cristian to Taciana Giambrone. The Ohio and Massachusetts Courts . . . will be notified accordingly."

2. *The Massachusetts proceedings.* Massachusetts became involved when, on November 12, 1987, Taciana filed a complaint under G. L. c. 209B, seeking enforcement of the March 12 custody order of New York. It is alleged, but not stipulated, that Taciana came to Massachusetts, bringing Cristian, to attend school. Her complaint was prompted by

---

[1]On May 18, 1987, the Ohio judge adjudicated Taciana to be in contempt of court. The judge entered an order authorizing "any law enforcement officer or agency of any state or jurisdiction" to find the child, take him from Taciana, and return him to Mark. Taciana was indicted, in Ohio, for the offense of child stealing, and a Federal warrant was issued for her arrest for flight to avoid prosecution in Ohio on that indictment.

[2]Mark had filed a complaint for divorce in Ohio on October 6, 1987, which was granted on December 15, 1987.

the fact that Mark had found her and had tried to take Cristian. She resisted, the police were called, and she was arrested on the outstanding warrant. See note 1, *supra*. In her complaint under c. 209B, Taciana asked that temporary custody of Cristian be awarded to the Department of Social Services. On November 13, Mark filed a counterclaim, seeking enforcement of the Ohio orders awarding him custody.

Also on November 12, in Ohio, the Court of Appeals of Greene County rendered its decision on Mark's appeal from the judge's determination (of May 8) that he should "relinquish" jurisdiction to New York. That determination was affirmed because, as stated in that decision, there was "no logical reason why the [New York] order should not be enforced in this state." On November 20, the Massachusetts probate judge entered a judgment enforcing the New York custody order and returned custody of Cristian to Taciana.[3] That judgment did not end the matter.

Shortly after the criminal matters were resolved, see note 3, *supra*, the Appellate Division of the Supreme Court of New York decided Mark's appeal. The court concluded that, under N.Y. Civ. Prac. L. & R. § 3217(a)(1) (McKinney 1992), Mark had an absolute right to discontinue his divorce action. Assuming, without deciding, that, under § 3217(b), a court could exercise its equitable power to estop the discontinuance, the Appellate Division found that Mark's conduct did not warrant the exercise of that power. The court reversed the judge's order and discontinued Mark's action for divorce. See *Giambrone* v. *Giambrone*, 140 A.D.2d 206 (N.Y. 1988).

This decision prompted Mark to request a rehearing in Massachusetts. The probate judge denied Mark's request on

---

[3]When, on November 17, Taciana was arraigned on the fugitive from justice charge, she applied for a criminal complaint against Mark for assault and battery and a restraining order under G. L. c. 209A. The restraining order issued. The Federal and Ohio charges against Taciana were ultimately dropped, leading to the dismissal of the Massachusetts complaint against her on February 16, 1988. On April 4, 1988, Mark admitted to sufficient facts on the criminal case against him, and the matter was continued without a finding for six months.

the basis that Ohio lacked the jurisdiction to enter the orders which Mark wanted enforced. In July, 1988, Mark resorted to self-help. With the assistance of his father, brother, and an unidentified person, Mark forcibly removed Cristian from Massachusetts. He was apprehended in Connecticut, and Cristian was returned to Taciana.[4]

After Mark failed in that attempted abduction, he brought a new complaint in Massachusetts. On October 4, 1988, he filed a complaint seeking enforcement of all the Ohio orders, including an order of habeas corpus, dated (as best we can make out) September 9, 1988. While that complaint was pending, Mark also filed a motion requesting that custody of Cristian be relinquished. The probate judge denied that motion, again explaining that it was based upon orders entered at a time when Ohio lacked jurisdiction to make any determination concerning the custody of Cristian.

There the matter stood until June 27, 1989, when Taciana filed a counterclaim, asking that Massachusetts take jurisdiction over the issue of Cristian's custody and enter a judgment in her favor, and Mark moved for final judgment. On August 2, 1990, the probate judge reaffirmed his order of February 9, 1989, and a judgment was entered denying Mark "all relief." Mark filed his notice of appeal. There is no Massachusetts order awarding custody of Cristian to either Mark or Taciana. The only question before us is whether the probate judge was correct in refusing to enforce the Ohio custody orders.

3. *Jurisdiction of the custody issue.* Under the circumstances in which this case was presented to the probate judge, a complaint for the enforcement of the Ohio orders (see G. L. c. 209B, § 12), it fell upon him to determine whether the Ohio orders were valid under its law and entitled to recognition. Resolution of that question brought into play, by necessity, consideration of the New York custody orders.

---

[4]Criminal charges were brought against Mark who, on February 3, 1989, admitted to sufficient facts to warrant a finding of guilty of conspiracy to commit assault and battery. A jail sentence of ten days was imposed, and the remaining charges were dropped.

On February 20, 1987, the date of the first custody order, New York was Cristian's home State even though he was then in Ohio. It was Mark who sought the New York order, and New York was the State where Taciana continued to live upon her return from her visit to Brazil. See N.Y. Dom. Rel. Law § 75-d, par. 1(a) (McKinney 1988), in which New York sets out a "home state" basis for jurisdiction to make a custody determination. When, on March 3, 1987, Ohio entered a custody order in Mark's favor, it lacked the jurisdiction to do so under its own law. See Ohio Rev. Code Ann. § 3109.31(A) (Baldwin 1988).[5] As of that date, New York had jurisdiction under the prerequisites of Ohio law, see note 5, *supra*, and the New York judge had written to and spoken with the Ohio judge concerning retention of jurisdiction by New York. See also 28 U.S.C. § 1738A(c)(2)(A) and (g). Moreover, according to the Ohio judgment of April 1, 1987, dismissing Mark's complaint, the Ohio judge specifically stated that "this Court finds that there is no jurisdiction to entertain issues presented to the State of New York." Thereafter, on May 5, 1987, the judge accepted the New York order granting Taciana custody of Cristian. However, he gave no reasons for staying enforcement of the New York order, filed in accordance with Ohio Rev. Code Ann. § 3109.32 (Baldwin 1988),[6] pending Mark's appeal from his decision.

---

[5]That statute provides: "If a court of another state has made a custody decree, a court of this state shall not modify that decree, unless it appears to the court of this state that the court that rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 3109.21 to 3109.36 of the Revised Code, or has declined to assume jurisdiction to modify the decree, and the court of this state has jurisdiction.".

[6]Section 3109.32, which is almost identical to N.Y. Dom. Rel. Law § 75-p (McKinney 1988) and G. L. c. 209B, § 12, reads: "(A) a certified copy of a custody decree of another state may be filed in the office of the clerk of any court of this state that renders custody decrees. The clerk shall treat the decree in the same manner as a custody decree of an appropriate court of this state. Until modified, a custody decree so filed has the same effect and shall be enforced in like manner as a custody decree rendered by a court of this state. (B) A person violating a custody decree of another state which makes it necessary to enforce the decree in this state

It is unnecessary for us to consider whether under Ohio law the judge was correct in staying enforcement of the New York order and not returning Cristian to Taciana. That question was decided by the Court of Appeals of Greene County, Ohio, on November 12, 1987. The court concluded that Mark's appeal was "without merit," there would· be "no abuse of discretion in enforcing the foreign order," and there was "no logical reason" why that order should not be enforced in Ohio.

Notwithstanding that decision, the Ohio judge issued an order of habeas corpus on September 9, 1988. It is that order which Mark wants Massachusetts to enforce. This order does not appear to be grounded upon any events that transpired subsequent to Mark's unsuccessful appeal in Ohio. Rather, the order is based upon the judge's previous orders (May 17, May 18, May 21, and July 31, 1987) granting custody of Cristian to Mark and Mark's successful appeal in New York from that judge's refusal to allow him to discontinue his divorce action. When the Massachusetts probate judge ruled upon Mark's motion to relinquish custody, filed during the pendency of his complaint for enforcement of the order of habeas corpus, he had before him an affidavit, dated December 9, 1988, from the Ohio judge.

We learn the factual basis for the order of habeas corpus from the face of the order and the judge's affidavit. To these facts we apply the law of Ohio and New York, as well as G. L. c. 209B, and the PKPA. In his affidavit, the Ohio judge states that he obtained jurisdiction over Cristian's custody pursuant to Mark's complaint for alimony filed on April 17, 1987. He recited that Cristian had been residing in Ohio for a "substantial amount of time," the "parties were residing in Ohio and had submitted to this Court's jurisdiction and requested affirmative relief as to this Court's jurisdiction as to custody of this child," there were "significant contacts with the State of Ohio," "as a result of hearing tes-

---

may be required to pay necessary travel and other expenses, including attorney's fees, incurred by the party entitled to the custody or his witnesses."

Giambrone *v.* Giambrone.

timony from both parties represented by counsel, as to the parties' verbal and alleged physical confrontations," as well as to Taciana's plans to remove Cristian from Ohio and the United States, Cristian was "in danger of mistreatment and physical harm," and, because Mark's action in New York had been dismissed, no other State had jurisdiction.

There is nothing in the various court papers before us or in the parties' stipulated facts to suggest that Taciana was in Ohio and put the issue of Cristian's custody to that forum for any reason other than to seek enforcement of the New York order. New York's jurisdiction was recognized by Ohio on April 1, Taciana went to Ohio on April 15, and Ohio accepted the New York order on May 5, 1987. Ohio could not thereafter exercise jurisdiction under Ohio Rev. Code Ann. § 3109.22(A)(2) (Baldwin 1988),[7] because New York, and not Ohio, was Cristian's home State in May, 1987, New York was exercising its jurisdiction in substantial conformity with Ohio law, and the New York judge had expressly (in writing and orally) retained jurisdiction. See Ohio Rev. Code Ann. § 3109.24(A) and (B), providing that in such circumstances, a "court of this state shall not exercise its jurisdiction." See also *State ex rel. Aycock* v. *Mowrey*, 45 Ohio St. 3d 347 (1989); *Minton* v. *McManus*, 9 Ohio App. 3d 165 (1983); *Squires* v. *Squires*, 12 Ohio App. 3d 139 (1983). Further, Ohio could not exercise jurisdiction under § 3109.22(A)(3)[8] for the reason that Cristian was not pres-

---

[7]Under § 3109.22(A)(2), a court may exercise jurisdiction where: "(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; [or] (3) The child is physically present in this state and either has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent." Those Ohio provisions are almost identical to N.Y. Dom. Rel. Law § 75-d, pars. 1(b) and (c) (McKinney 1988), and G. L. c. 209B, § 2(*a*)(2) and (3).

[8]See note 7, *supra.*

ent in Ohio when the custody orders were made. The fact that Taciana had removed him in violation of the court's order was not an event authorizing an exercise of jurisdiction under Ohio Rev. Code Ann. § 3109.22 and § 3109.31. Rather, Mark could and should have proceeded in New York as ordered by the Ohio court on April 1, 1987, or on his own initiative under N.Y. Dom. Rel. Law § 75-p (McKinney 1988). See note 6, *supra.*

Additionally, it makes no difference whether the judge relied upon § 3109.22(A)(4), that "no other state would have jurisdiction," in conjunction with (A)(2) or as an independent basis for exercising jurisdiction. Mark's appeal in New York, from the judge's refusal to recognize his discontinuance, was not decided until May 12, 1988. That forum retained jurisdiction until at least that date, if not longer (as will be discussed, *infra*), and Mark was bound by its orders pending his appeal. See *Kolin* v. *Kolin*, 134 Misc. 2d 70 (N.Y. Sup. Ct. 1986). See also N.Y. Dom. Rel. Law § 240, pars. (1) and (3) (McKinney Supp. 1992). Moreover, under basic jurisdictional principles, the 1988 discontinuance of Mark's action in New York did not relate back and serve to validate the orders entered in Ohio at a time (1987) when that forum was precluded, by its law and 28 U.S.C. § 1738A(g), from exercising jurisdiction in a custody proceeding. See *Thompson* v. *Thompson*, 484 U.S. 174, 182-183 (1988), discussing the enactment of the PKPA "to extend the requirements of the Full Faith and Credit Clause to custody determinations." See also *Archambault* v. *Archambault*, 407 Mass. 559, 567 (1990).

Had the probate judge enforced the orders of Ohio, he effectively would have been modifying the New York custody orders of March 12 and November 16, 1987. Those orders, as has been discussed, were made in substantial conformity with the law of Ohio and Massachusetts, and there was nothing before the probate judge to indicate that New York was declining jurisdiction. He was, therefore, correct in denying Mark's complaint for enforcement. See G. L. c. 209B, § 2(*e*). See also 28 U.S.C. § 1738A(g).

4. *The present appropriate forum.* In his memorandum of
decision of February 8, 1989, the probate judge noted that
he had advised the parties that New York was Cristian's
home State, that he was deferring to the jurisdiction of New
York, and that the parties should pursue their action in that
State. As earlier noted, neither Mark nor Taciana followed
this advice. Instead, on June 27, 1989, Taciana filed a coun-
terclaim on Mark's complaint for enforcement, asking that
Massachusetts take jurisdiction over the custody dispute and
award custody of Cristian to her. It appears from the docket
entries and the judgment that no action has been taken on
Taciana's counterclaim. We think it obvious, however, in
light of the probate judge's referral of the parties to New
York, that the judge implicitly denied Taciana's counter-
claim. Although Taciana did not file a notice of appeal, both
she and Mark have argued before us whether Massachusetts
can or should make a custody determination under G. L.
c. 209B.

Our decision affirming the order of the probate judge puts
the choice of the forum to determine Cristian's custody be-
tween New York and Massachusetts. The last word spoken
by New York on that question was on November 16, 1987,
when the judge granted Taciana a divorce and custody of
Cristian. The divorce, however, was granted on Taciana's
counterclaim for divorce on Mark's complaint which was dis-
continued on May 12, 1988.[9] In granting Taciana a divorce
and custody of Cristian on November 16, 1987, however, the
New York judge stated that the custody order was to remain
in effect until the judgment was settled, an event which has
not taken place.

It is unclear to us whether by that order (November 16,
1987) the New York judge was entering an order of protec-
tion under N.Y. Dom. Rel. Law § 240, pars. (1) and (3),
and continuing to exercise home State jurisdiction over Cris-
tian. See *Umina* v. *Malbica*, 27 Mass. App. Ct. 351, 358
(1989), where we stated that "Massachusetts, unlike States

---

[9]Mark had obtained a divorce in Ohio on December 15, 1987, but we
are not here concerned with the divorce judgments.

more faithful to the UCCJA, does not explicitly reserve jurisdiction under a continuing jurisdiction or a 'best interest' provision," and cited to *Enslein* v. *Enslein*, 112 A.D.2d 973 (N.Y. 1985).

In view of the history of this dispute, we think that, rather than expect Mark or Taciana to return to New York to ascertain whether that forum views itself to be Cristian's home State and, if so, whether it will defer to Massachusetts, it would better serve Cristian to have that determination made by the probate judge under G. L. c. 209B, § 7. Should the probate judge determine that New York no longer has jurisdiction or that it declines to exercise it, then Massachusetts will have jurisdiction to make a determination as to Cristian's custody pursuant to G. L. c. 209B, § 2(*a*)(2) or (4).

5. *Conclusion.* The order of the Probate Court denying the complaint for enforcement is affirmed, and the matter is remanded to that court for further proceedings under G. L. c. 209B, § 7.

*So ordered.*