OMAR KHAN *vs.* LORAINE TOORIE SAMINNI
(and a companion case).

Suffolk. January 5, 2006. - February 15, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Child Custody Jurisdiction Act. Jurisdiction,* Custody of child, Probate Court.
   *Probate Court,* Jurisdiction.

A Probate and Family Court judge properly declined to exercise jurisdiction
   over a custody dispute which was the subject of a consent judgment already
   entered in another jurisdiction (a foreign country) in light of comity
   considerations and G. L. c. 209B, § 14 [92-97]; further, the mother's due
   process claim, based on the judge's failure to afford her an evidentiary
   hearing, lacked merit [97-99].

COMPLAINT to establish paternity filed in the Suffolk Division
of the Probate and Family Court Department on August 26,
2004.

A motion to vacate an ex parte temporary order was heard by
*Nancy M. Gould,* J.

PETITION for registration and enforcement of a foreign custody
judgment filed in the Suffolk Division of the Probate and Family Department May 11, 2005.

The case was heard by *Nancy M. Gould,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Michael J. Traft* for the mother.

*Robert J. Rivers, Jr. (Tannaz N. Saponaro* with him) for the
father.

GREANEY, J. The parties in this custody dispute are the mother
and father of a minor child who was born in Trinidad, West Indies, but who currently resides in the Allston section of Boston
with his mother. The father, who lives in Trinidad, filed a petition in the Suffolk Division of the Probate and Family Court
Department (Probate and Family Court), pursuant to G. L.

c. 209B, §§ 12 and 14, seeking enforcement of the terms of a consent decree, and related orders, entered in the Republic of Trinidad and Tobago Family Court, Supreme Court of Judicature (Trinidad Family Court), which awarded the mother physical custody of the son, but prohibited either parent from taking the son out of Trinidad, except by agreement of the other parent or by court order. A judge in the Probate and Family Court granted the father's petition for enforcement of the Trinidad consent decree and ordered the mother to return the child to Trinidad no later than July 27, 2005. The judge denied the mother's motion for a stay pending determination of a motion for reconsideration and an evidentiary hearing. The mother obtained an emergency stay of the order from a single justice of the Appeals Court and appealed to that court. We transferred the case here on our own motion and now affirm the order for enforcement of the Trinidad consent decree.

The following facts do not appear to be in dispute. The parties are the biological parents of a son born, out of wedlock, on April 5, 1991, in Trinidad. The son lived with his mother in Trinidad for the first several years of his life. In 1995, the mother relocated to Florida to pursue an education in medical radiography, leaving the son in Trinidad. During this time, the son lived in the home of his mother's brother from Monday through Friday and spent weekends at the home of the father and the father's wife. In 1996, at the mother's request, the son was sent to the United States to live with her. In early 1999, the son was sent back to Trinidad. He lived there with the father for four years, returning to the United States every summer to spend one month with the mother. During the son's visit with the mother in the summer of 2003, the mother (who, by this time, was married and living with her husband in Allston) informed the father that the son would not be returning to Trinidad as planned. She enrolled the son in public school, and he resided that year in Allston with the mother and her husband. He spent the summer of 2004 with the father in Trinidad and was due to return to the mother in Massachusetts on August 29. On August 24, the father advised the mother by telephone that the son would not be returning to Massachusetts but would remain with him in Trinidad. Beyond these facts, the affidavits

and complaints of the mother and father present widely differing accounts of the dispute, which we need not set forth.

On August 25, the father filed an emergency application in the Trinidad Family Court for orders to make the son a ward of the court, to restrain the mother from removing him from Trinidad, and to award him custody. The matter was set down for hearing before a judge on September 2. On August 26, 2004, the mother filed a complaint to establish paternity in the Probate and Family Court.[1] That same day,[2] a judge issued an ex parte temporary order awarding sole legal and physical custody of the son to the mother and further providing that the son be returned to the United States by August 29. On or about August 27, the mother traveled to Trinidad, the temporary custody order in hand, with the goal of returning to the United States with the son. There she was served with papers informing her of the upcoming hearing in the Trinidad Family Court.

The mother and father, accompanied by their respective counsel, attended the September 2 hearing in the Trinidad Family Court. At the end of the hearing, an order was issued by the Trinidad Family Court that a consent decree enter in that court. As stated, the terms of the consent decree awarded custody of the son to the mother, with weekends, one-half of each school vacation, and alternate holidays to be spent with the father. The consent decree also prohibited either parent from removing the son from Trinidad, except by agreement of the other parent or by court order.

On October 1, 2004, the mother and the son departed for the United States without the permission of the father (who was in London at the time) and without notifying the Trinidad Family Court. After an ex parte hearing on October 18, 2004, the Trinidad judge once again made the son a ward of the court and ordered the mother to return the son to Trinidad forthwith for a hearing and determination of custody. The son has remained with the mother in Allston and has not returned to Trinidad.

---

[1]The father is listed on the son's birth certificate and does not dispute his paternity.

[2]The exact date that the temporary custody order issued is the subject of some confusion. For our purposes, it suffices to assume that the date was August 26, 2004.

On May 11, 2005, the father filed a petition in the Probate and Family Court seeking enforcement of the terms of the consent decree, and the related orders that were issued by the Trinidad Family Court on October 18. On June 10, the father filed a motion seeking to vacate the temporary custody order entered in the Probate and Family Court. On June 1, the mother filed an answer and counterclaim requesting that the custody issue be determined in Massachusetts, and on June 14, a motion seeking an investigation or, in the alternative, the appointment of a guardian ad litem (GAL) to represent the son's best interest.

A hearing was held in the Probate and Family Court on June 28, 2005. The judge recognized that the Massachusetts Child Custody Jurisdiction Act, G. L. c. 209B, governs any proceeding in which a custody dispute is presented for resolution.[3] General Laws c. 209B, inserted by St. 1983, c. 680, § 1, was modeled, in large part, on the Uniform Child Custody Jurisdiction Act. See 9 (Part IA) U.L.A. 111 (Master ed. 1979).[4] Under G. L. c. 209B, the judge was required, first, to determine whether the court had authority to exercise jurisdiction, and second, if such authority existed, whether it should be exercised in the circumstances of this case. See *Custody of Brandon*, 407 Mass. 1, 5-6 (1990). After considering affidavits and other documents submitted by the parties, and hearing arguments of counsel, the judge declined to exercise jurisdiction over the case, vacated the temporary order granting the mother custody, and ordered enforcement of the Trinidad consent decree and

[3]The parties do not assert that principles of the Hague Convention on the Civil Aspects of International Child Abduction, to which the United States is a signatory, see 42 U.S.C. §§ 11601-11610 (2000 & Supp. II 2002), apply to this case. The father asserts in his brief that Trinidad is a party to the Hague Convention, but "the treaty has not yet entered into force between the two countries; therefore, the provisions of the Hague Convention do not apply to the facts of this case." The mother, in turn, states in her brief that "Trinidad is not one of the signatories to [the Hague] [C]onvention and thus the particular principles of comity do not apply."

[4]Although this court has recognized that our statute differs from the Uniform Child Custody Jurisdiction Act "in material respects," any differences in the two statutes are not relevant to this case. *Custody of Brandon*, 407 Mass. 1, 6 n.4 (1990), quoting *Tazziz* v. *Tazziz*, 26 Mass. App. Ct. 809, 814 (1988). See *Delk* v. *Gonzalez*, 421 Mass. 525, 529 n.2 (1995); *Custody of a Minor (No. 3)*, 392 Mass. 728, 731 n.3 (1984); *Umina* v. *Malbica*, 27 Mass. App. Ct. 351, 354-355 & n.2 (1989).

dismissal of the mother's paternity petition. As stated, the judge further ordered the mother to return the child to Trinidad no later than July 27, 2005.

A second hearing was held on July 25, in which the judge considered the mother's motions for reconsideration and for an evidentiary hearing, and for a stay of the order requiring the son's return to Trinidad. The mother's arguments focused on the factual circumstances underlying the Trinidad consent judgment, to which, according to the mother, she had agreed while under duress.[5] The mother's counsel also informed the judge of disturbing telephone calls to the mother's home in Allston on July 15, 2005, from a caller allegedly identifying himself as a judge of the High Court of Trinidad, who is also a friend and neighbor of the father, and from a caller allegedly identifying himself as the first caller's son.[6] The mother argued to the judge that the content of these calls supported her position that, if forced to return to Trinidad with the son, she could not expect justice from the Trinidad Family Court, and that she feared that she would never be allowed to see the son again if he is returned to Trinidad. The judge denied the motion for a stay, and this appeal followed.

We conclude that the judge in the Probate and Family Court properly declined to exercise jurisdiction over the custody dispute. The judge recognized that G. L. c. 209B, § 2 (d),[7] bars

---

[5]The mother alleges, for example, that she was told that the temporary custody order awarding custody to her had no validity in Trinidad; that she had not been allowed to see the son and had agreed to remain in Trinidad with him because she believed that was the only way she would see the son; and that at no time were the interests of the child considered.

[6]The allegations regarding the telephone calls were presented to the judge in a supplemental affidavit. According to the affidavit, the caller referred to her as a "slut," a "prostitute," and someone "who has slept with 400 men"; told her that the Trinidad police were coming to get her and lock her in jail for the rest of her life; stated that he was a "really powerful man" and a good friend of the attorney who had represented the mother in the Trinidad proceedings; and vowed that she would "pay for this." The mother received a second call that evening purporting to be from the son of the first caller, who threatened to beat the mother.

The mother stated in the affidavit that as a result of the telephone calls, she fears for the physical safety of herself and the son and, moreover, fears that if the son returns to Trinidad, she will never see him again, or that, if she returns to Trinidad, she will be placed in jail.

[7]Section 2 (d) provides, except in certain circumstances not applicable here:

the exercise of jurisdiction while a custody proceeding is pending in another jurisdiction, and that G. L. c. 209B, § 7 (*a*),[8] provides a judge with discretion to decline to exercise jurisdiction at any time prior to making a custody determination on concluding that jurisdiction would be based on the "wrongful conduct" of the party seeking jurisdiction. The judge further reasoned that, under the clear language of G. L. c. 209B, § 14, she had no authority to disregard the custody determination of the Trinidad Family Court. The provisions of §§ 2 and 7 are generally phrased in reference to custody proceedings that are pending in other States, not proceedings in which a final custody determination has been made. See *Custody of Brandon, supra* at 8-9. The judge was correct, however, to recognize their applicability to circumstances in which a determination of custody had been entered in a court of another country. See *Custody of a Minor (No. 3)*, 392 Mass. 728, 733 (1984).[9] It is § 14, however, the third statutory provision on which the judge relied,

> "A court of the commonwealth shall not exercise jurisdiction in any custody proceeding commenced during the pendency of a proceeding in a court of another state where such court of that state is exercising jurisdiction consistently with the provisions of this section for the purpose of making a custody determination . . . ."

[8]Section 7 (*a*) reads in relevant part:

> "A court which has jurisdiction pursuant to section two may decline to exercise its jurisdiction at any time prior to making a custody determination upon finding that its assumption of jurisdiction . . . (ii) would be based upon the illegal or otherwise wrongful conduct of a party . . . ."

[9]Section 23 of the Uniform Child Custody Jurisdiction Act, on which, as stated above, G. L. c. 209B was modeled in large part, provides: "The general policies of this Act extend to the international area. The provisions of this Act relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons." 9 (Part IA) U.L.A. 639 (Master ed. 1999). The official comment to § 23 explains: "Not all the provisions of the Act lend themselves to direct application in international custody disputes; but the basic policies of avoiding jurisdictional conflict and multiple litigation are as strong if not stronger when children are moved back and forth from one country to another by feuding relatives." *Id.*

on which we base our conclusion that the judge properly deferred to the Trinidad Family Court in this matter.

The dispute was the subject of a consent judgment already entered in the Trinidad Family Court. Section 14 of G. L. c. 209B provides: "To the extent that the legal institutions of other nations have rendered custody determinations in substantial conformity with the provisions of this chapter, the courts of the commonwealth shall grant due recognition to such determinations." Under § 14, the issue is not whether the Probate and Family Court had jurisdiction to determine the custody question pursuant to the mother's paternity complaint, but whether the judge had authority to exercise that jurisdiction in the face of the Trinidad consent decree. We conclude that she did not. Our analysis tracks standards reflecting the traditional doctrine of comity articulated by the Appeals Court in *Schiereck v. Schiereck*, 14 Mass. App. Ct. 378, 380 (1982), citing generally *Kapigian* v. *Minassian*, 212 Mass. 412, 415-416 (1912); J.F. Lombard, Family Law § 2383.5 (Supp. 1981); Restatement (Second) of Conflict of Laws § 98 (Approved Official Draft 1971), and approved by this court in *Custody of a Minor (No. 3)*, *supra* at 735, for use in the context of G. L. c. 209B.

The facts of *Custody of a Minor (No. 3)*, *supra*, are remarkably similar to those here. The father in that case had petitioned the Family Court in Sydney, Australia, in January, 1984, for custody of one of his two children after the mother, who had been living in Massachusetts with the children since February, 1983, informed him that she did not plan on returning the children to Australia as planned, despite a court order requiring her to do so. After a hearing in Australia (of which the mother had notice and at which she was represented by counsel), the Australian court awarded the father guardianship and custody of the child and further ordered that the child be returned to Australia forthwith. See *id.* at 730. The mother appealed from the Australian order, and the father filed a petition in the Probate and Family Court seeking its enforcement. The mother, meanwhile, sought resolution of the custody dispute in Massachusetts. The judge in the Probate and Family Court determined that, under G. L. c. 209B, the Australian court lacked jurisdiction and that the Probate and Family Court had jurisdic-

tion over the custody proceedings. See *id.* at 729. We concluded that the Australian court had jurisdiction and vacated the judge's ruling of law.

Because the mother's appeal of the custody order was still pending in the Australian court, our decision that the Family and Probate Court lacked jurisdiction was based, primarily, on our consideration of the mandates contained in G. L. c. 209B, § 2 (*d*) and (*e*).[10] See *id.* at 734. We took that occasion to comment, however, on the provision contained in § 14 regarding the enforcement of custody determinations of foreign countries. Although we noted that there might be occasions where recognition of a foreign country's custody determinations would not be owed, for example, when a determination is made in an "arbitrary or capricious manner," *id.* at 735, we left no room for doubt that § 14 compels a judge to "grant due recognition" to custody determinations rendered by a court of a foreign country "if those determinations have been rendered in substantial conformity with G. L. c. 209B." *Id.* We further stated that, to meet the "substantial conformity" test, three procedural components must be satisfied: (1) jurisdiction over the parties and over the subject matter; (2) applicable procedural and substantive law reasonably comparable to our laws; and (3) the foreign order must be based on a determination of the "best interests of the child." *Id.*, citing *Schiereck* v. *Schiereck, supra.* See *Akinci-Unal* v. *Unal*, 64 Mass. App. Ct. 212, 220 (2005).

Those components are present in this case. Contrary to the mother's argument, the Trinidad Family Court had subject matter jurisdiction. That Massachusetts may be the son's "[h]ome

---

[10]Section 2 (*e*) provides:

"If a court of another state has made a custody determination in substantial conformity with this chapter, a court of the commonwealth shall not modify that determination unless (1) it appears to the court of the commonwealth that the court which made the custody determination does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or that such court has declined to assume jurisdiction to modify its determination and (2) a court of the commonwealth now has jurisdiction pursuant to this chapter."

state," as defined by G. L. c. 209B, § 1,[11] is not determinative of jurisdiction. Such a determination would serve only to allow the Probate and Family Court judge to exercise jurisdiction, pursuant to G. L. c. 209B, § 2 (*a*),[12] in the first place; it would neither compel the judge to exercise jurisdiction, nor prohibit the Trinidad Family Court from doing so. Trinidad law vested the Trinidad Family Court with subject matter authority to adjudicate the custody issue. The mother appears to have conceded as much when she appeared, with counsel, at the hearing on September 2, 2004. The record contains a letter from the judge who conducted the Trinidad hearing advising that the mother was present at the hearing, with her attorney, and that the mother "indicated that she intended to relocate permanently to Trinidad and Tobago and it was on that basis that a [c]onsent [o]rder was entered." The mother does not contradict these assertions and, significantly, describes the consent judgment, in her motion for reconsideration and an evidentiary hearing, as "a negotiated agreement." See *Bassett* v. *Blanchard,* 406 Mass. 88, 90-91 (1989), citing *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 n.9 (1982) (party who fails to litigate jurisdictional question in foreign forum, when "opportunity" exists to do so, may not litigate that issue in Massachusetts in collateral attack on judgment).

We have examined the documents contained in the record referencing procedural and substantive laws of Trinidad regarding custody matters. There can be no serious doubt that the

---

[11]Under G. L. c. 209B, § 1, the "[h]ome state" is "the state in which the child immediately preceding the date of commencement of the custody proceeding resided with his parents, a parent, or a person acting as parent, for at least 6 consecutive months . . . ."

[12]Section 2 (*a*) (1) provides that:

> "Any court which is competent to decide child custody matters has jurisdiction to make a custody determination by initial or modification judgment if . . . the commonwealth (i) is the home state of the child on the commencement of the custody proceeding, or (ii) had been the child's home state within six months before the date of the commencement of the proceeding and the child is absent from the commonwealth because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to reside in the commonwealth . . . ."

laws followed by the Family Courts in Trinidad are reasonably comparable to our own laws. Above all, the record demonstrates that Trinidad judges are bound by statute and case law to treat the welfare of the minor child as the paramount consideration in determining custody issues. The mother's insistence that the consent decree in this instance was reached without an independent evaluation of the son's "best interest" can have no persuasive value, because the terms of the decree to which she now objects were reached on the basis of her agreement. It is clear that those terms did not authorize the mother's permanent removal of the son to Massachusetts. The mother should not be permitted to seek relief in Massachusetts because she is unable, or unwilling, to comply with conditions to which she previously agreed. See *Murphy* v. *Murphy*, 380 Mass. 454, 460 (1980) (three years before enactment of G. L. c. 209B, decision based, in part, on Uniform Child Custody Jurisdiction Act). Any petition to remove the travel restrictions, or otherwise reconsider or modify the consent decree, at this time, must be addressed to the Trinidad Family Court. See G. L. c. 209B, § 2 (*e*).

We reject the mother's claim that the judge's refusal to hold an evidentiary hearing to afford her the opportunity to demonstrate that the Trinidad hearing was not a fair proceeding, or to allow the son to testify to his own wish to remain in the United States, violated her Federal and State constitutional rights to due process.[13] The order for enforcement of the Trinidad consent decree acted neither to remove the son from the mother's custody nor otherwise to deprive her of a fundamental liberty interest in the son. See *Custody of Lori*, 444 Mass. 316, 317 (2005); *Care & Protection of Erin*, 443 Mass. 567, 570 (2005). An evidentiary hearing was not warranted. Contrast *Tazziz* v. *Tazziz*, 26 Mass. App. Ct. 809, 813-816 (1988) (when judge failed to recognize discretion to hear custody dispute set for hearing in Israeli court, case remanded for evidentiary hearing to ensure adequate basis for determination of jurisdictional issues). There is nothing in G. L. c. 209B that would allow a court in Massachusetts to address the substantive merits of the

---

[13]The mother did not formally request an evidentiary hearing at the June 28 hearing, but included a request to reopen the proceedings and conduct an evidentiary hearing as part of her motion for reconsideration.

consent decree, or to otherwise evaluate its fairness or possible negative repercussions (including future immigration consequences), to the mother or son. See *Guardianship of Zeke*, 422 Mass. 438, 446 n.12 (1996); *Custody of a Minor (No. 3)*, 392 Mass. 728, 734 (1984). "If a Massachusetts court had the power to disregard a foreign judgment by considering the propriety of that judgment in a substantive, rather than a procedural, sense, the very purpose of the law would be undermined." *Id.* The circumstances would be different if the son's return to Trinidad raised credible concerns of physical harm to the son. The mother's allegation, contained in her answer and counterclaim filed in the Probate and Family Court, that she "fears for the [son's] health and well being if the [son] is placed with the father," however, has no reasonable factual support in the record before us. This case presents a question of jurisdiction and raises no issue of domestic abuse.[14] Contrast *Custody of Vaughn*, 422 Mass. 590, 599-600 (1996) (judge making custody order required to make detailed findings of fact with regard to effect of domestic violence on child).

Here, the matter of custody has been determined, by agreement, in a court of competent jurisdiction in Trinidad, in substantial conformity with our laws. The father has filed, pursuant to G. L. c. 209B, § 12,[15] a certified copy of the consent decree with the Probate and Family Court. It would, in these circumstances, be beyond the scope of the judge's discretion, under G. L. c. 209B, § 14, not to defer to that court. Contrast *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 614-615 & n.8 (1987) (judge in Probate and Family Court had discretion not to defer jurisdic-

---

[14]We neither discount nor credit the mother's allegations contained in the supplemental affidavit. See note 6, *supra*. Nothing in the affidavit, or anywhere else in the record, alleges any history of abuse by the father against the son. The telephone calls described in the affidavit are not alleged to be from the father, nor is there any evidence that they were made at his behest.

[15]Section 12 (*a*) provides:

"A certified copy of a custody judgment of another state may be filed in the office of the clerk or register of any court of competent jurisdiction in the commonwealth. The clerk or register shall treat the judgment in the same manner as a custody judgment of a court of the commonwealth. A custody judgment so filed has the same effect and shall be enforced in like manner as a custody judgment rendered by a court of the commonwealth."

tion to German court, where there were no pending custody proceedings, or previous valid custody determinations, elsewhere). We need not, therefore, address the mother's claim that the judge erred in ceding jurisdictional authority under § 2 (*d*), when the father's action in Trinidad had been filed a mere one day before the mother's action in Massachusetts, or her challenge to the judge's conclusion that she had committed "wrongful conduct," under § 7 (*a*), when she traveled with the son to Massachusetts in violation of the terms of the consent decree.[16]

The orders of the Probate and Family Court vacating the temporary order awarding custody to the mother and dismissing the mother's paternity complaint, and for enforcement of the Trinidad consent decree, and related orders, are affirmed. We remand the case to the Probate and Family Court for entry of an order requiring the return of the child to Trinidad, on or before an appropriate date to be set by the judge in that court.

*So ordered.*

---

[16]We note, however, that the judge appeared to fault the mother for failing to inform the Probate and Family Court, on August 26, 2004, of the matter pending in the Trinidad Family Court, and in failing to inform the father, or the Trinidad Family Court, of her own paternity complaint and the temporary ex parte custody order, when she appeared in that court on September 2. There is nothing in the record that suggests the mother's awareness, on August 26, of the Trinidad proceeding filed only the previous day, or that demonstrates the father's lack of awareness, on September 2, that the mother had already obtained an ex parte temporary custody order in Massachusetts. There appears to be an unresolved factual dispute on the latter point, but one that is not material to our resolution of the jurisdictional question.