QIUYUE SHAO *vs.* YUE MA.

No. 06-P-1439.

Worcester. December 4, 2006. - February 22, 2007.

Present: PERRETTA, LAURENCE, & GRASSO, JJ.

*Divorce and Separation,* Jurisdiction, Foreign determination as to custody of child, Division of property. *Probate Court,* Custody of child. *Child Custody Jurisdiction Act. Jurisdiction,* Custody of child.

In a divorce case where the parties, who had ties to both the United States and China, disputed custody of their minor daughter (who was born in the United States and attended boarding school in China), as well as the division of their marital assets, the probate judge misunderstood and misapplied relevant legal principles and failed to make the careful factual findings necessary for determining whether she had the authority to exercise jurisdiction to decide the custody of the child and, if such authority existed, whether it should be exercised, given that the wife had concomitantly submitted herself to the jurisdiction of a court in China that had adjudicated the disputed matters and entered a judgment [312-315]; further, the judge also erred in dismissing the divorce complaint insofar as it sought division of certain marital property, where the Probate and Family Court unquestionably had personal jurisdiction over the husband and subject matter jurisdiction over the wife's complaint [315-316].

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on June 10, 2005.

Entry of a judgment dismissing the complaint was ordered by *Denise L. Meagher,* J.

*Howard J. Potash* (*Edward J. McTighe* with him) for Qiuyue Shao.

*Wei Jia* for Yue Ma.

GRASSO, J. The plaintiff, Qiuyue Shao (wife), appeals from a judgment of the Worcester Division of the Probate and Family Court Department (probate court) dismissing her complaint against Yue Ma (husband) for divorce, custody, and division of marital assets on jurisdictional grounds.

1. *Background.*[1] The parties are an unusually mobile, financially successful couple with ties to both the United States and China. They were born in China and married there in 1984. In the mid-1990's, they immigrated to the United States and settled in Westborough. They have two children, an older daughter, born in China, who has reached her majority, and the subject child, who was born in the United States on January 28, 1997, and is a United States citizen. Both parents are "permanent residents" of the United States — that is, they hold "green cards." They are highly educated[2] international entrepreneurs, whose businesses and property are located in both the United States and China. Insofar as living arrangements are concerned, they jointly own a home in Westborough, and they each maintain an apartment in Beijing. They have registered motor vehicles in both Massachusetts and Beijing. The parties' older daughter received most of her schooling in the United States and now attends college here. Before difficulties arose between them, the parties apparently agreed that the younger child, Mona, would receive her elementary school education in China and thereafter be educated in the United States. In China, Mona attends a school where she boards four days per week. She spends the balance of the week with her father.[3] She returns to the United States during school vacations.

2. *The legal proceedings.* On June 10, 2005, the wife filed a complaint for divorce against her husband in the probate court. She also requested custody of their nine and one-half year old daughter Mona and a division of marital assets.

On July 29, 2005, the husband was served, in hand, with the complaint and the wife's motion for temporary orders. He and Mona then left for Beijing, where the child was enrolled in

---

[1]The undisputed background facts are set forth in the limited findings of the probate judge as developed further in the memorandum of decision and order of the single justice staying the judgment and order of the probate court.

[2]Both parents have postgraduate educations. The wife is a graduate of Harvard Business School.

[3]The wife visits with the child during the school year, but the extent of the child's contact with the wife during the school year is not clear from the record. Similarly undeveloped is the extent of the wife's presence in China during that time. As noted, the wife has an apartment and motor vehicle in Beijing and business interests in China.

school according to the parties' agreement. The husband was not present at the hearing on the wife's motion for temporary orders, held on August 22, 2005. By order of that date, the probate judge awarded temporary legal and physical custody of the child to the wife, but did not order the husband to return the child to Massachusetts.

About the same time, through local counsel in Beijing, the wife filed a divorce complaint with the Intermediate People's Court of Beijing (Beijing court), together with a copy of the probate court's temporary order. That complaint also sought a division of marital assets and custody of Mona, who, as previously noted, was then in Beijing for the school term.

On March 9, 2006, the husband moved in the probate court to vacate or modify that court's temporary order. A judge other than the judge who granted the temporary custody order issued a sua sponte order requiring the parties to attend a status conference on July 19, 2006, where the issue of jurisdiction was to be addressed.

On July 4, 2006, prior to the status conference in the Massachusetts action, the Beijing court granted the parties a divorce, divided their property in China (but not elsewhere), and granted the husband custody of Mona. The Beijing court stated that the child, although born in the United States, is and has been living in China since 2002, and that it is to the "benefit of the child's life and growth" that the father have custody. The available translation of that decision does not explain the rationale by which the benefit to the child was determined, nor does it contain any provision for visitation by the wife.[4]

By the time of the probate court status conference on July 19, 2006, the child had returned to the United States following completion of her school term in Beijing, and was in the care of the wife in Westborough. Both the wife and the husband appeared and were represented by counsel.[5] The judge inquired of counsel and the parties, who were sworn. The parties and counsel

---

[4]The wife has appealed so much of the Chinese judgment as awarded the husband custody of Mona, and that appeal is pending. The parties agree that under Chinese law a judgment does not take effect while an appeal is pending.

[5]A translator also was present to assist the husband.

made representations to the court, but no formal evidentiary hearing was held, nor was cross-examination afforded.

On August 6, 2006, the probate judge, relying on G. L. c. 209B, dismissed the case for lack of jurisdiction. She concluded that the probate court did not have jurisdiction to enter the temporary order (which she vacated) because the child "had not been domiciled in the Commonwealth of Massachusetts for six months pr[e]ceeding the filing." She concluded further that dismissal was warranted because the wife had submitted herself to the jurisdiction of the Beijing court where the matters at issue had been adjudicated and a judgment entered. The judge ordered the wife to "immediately return the child's passport documents and/or cooperate with obtaining a duplicate passport such that the child is returned to the father forthwith."

Thereafter, the judge denied the wife's various motions to vacate and for reconsideration, to enter a stay, and to appoint a guardian ad litem and an attorney for the child. The wife then filed a request for a stay with a single justice of the Appeals Court. In granting a stay of the judgment, the single justice reasoned that potentially significant facts may not have been fully developed or given adequate consideration in the probate court. We agree substantially with that assessment. We conclude that the judge misunderstood and misapplied relevant legal principles and failed to make the careful factual findings necessary for determining (1) whether the probate court had the authority to exercise jurisdiction to decide the custody of the child; and (2) if such authority existed, whether it should be exercised. See *Khan* v. *Saminni*, 446 Mass. 88, 91, 96 (2006). The judge also erred in dismissing the wife's divorce complaint insofar as it sought division of certain marital property.

Accordingly, we reverse and remand to the probate court for further proceedings consistent with this opinion. The judge shall receive additional evidence as may be necessary to make the requisite factual findings. See *Tazziz* v. *Tazziz*, 26 Mass. App. Ct. 809, 813-814 (1988) (when judge failed to recognize discretion to hear custody dispute, case remanded for evidentiary hearing to insure adequate basis for determination of jurisdictional issues).

3. *The custody determination.* The probate court unquestionably has personal jurisdiction over the husband and subject matter jurisdiction over the wife's complaint. The husband was served in hand, and the parties lived together as husband and wife in the Commonwealth for the requisite period. See G. L. c. 215, § 3; G. L. c. 208, §§ 4, 5. That jurisdiction is not extinguished by a subsequent proceeding in China.[6]

With regard to a custody and visitation determination, the issue is not whether the probate court had jurisdiction, but whether the judge had authority to exercise that jurisdiction. See *Khan* v. *Saminni*, 446 Mass. at 91; *E.N.* v. *E.S.*, 67 Mass. App. Ct. 182, 191-192 & n.20 (2006). To make this determination, the judge was required to apply G. L. c. 209B, the Massachusetts Child Custody Jurisdiction Act (MCCJA),[7] and determine, in the first instance, whether Massachusetts had "home state" jurisdiction, pursuant to G. L. c. 209B, § 2(*a*)(1), at the time that the wife filed the action.

General Laws c. 209B, § 1, as inserted by St. 1983, c. 680, § 1, defines "home state" as "the state in which the child immediately preceding the date of commencement of the custody proceeding resided with his parents, a parent, or a person acting as parent, for at least 6 consecutive months . . . . Periods of temporary absence of any of the named persons are counted as part of the 6-month . . . period."[8]

As an initial matter, the probate judge did not decide the child's home State by reference to where the child "resided" as required by the statute. Rather, the judge found that "at the time of the filing of the divorce the minor child . . . had not been *domiciled* in the Commonwealth of Massachusetts for six months pr[e]ceeding the filing" (emphasis added). On that basis, the judge determined that the previous order granting the wife temporary custody of the child had to be vacated because the

---

[6]At the time the wife filed her complaint in the Commonwealth, there were no other pending custody proceedings.

[7]The MCCJA is similar but not identical to the Uniform Child Custody Jurisdiction Act (UCCJA). See *Umina* v. *Malbica*, 27 Mass. App. Ct. 351, 354-357 (1989).

[8]Section 1 further defines a "State" as "any state, territory, or possession of the United States, the Commonwealth of Puerto Rico, and the District of Columbia."

court did not have jurisdiction. Because the judge did not address the issue framed by the statute, it is open to question whether she evaluated the determinative issue properly. See *Pizzino* v. *Miller*, 67 Mass. App. Ct. 865, 872-873 (2006) (court questioned whether "fact finding ha[d] taken place in the light of properly applied legal principles"). Accepting, as we must, that G. L. c. 209B applies in circumstances where the custody dispute is between a "State" (as therein defined) and another nation (as to which the statute is silent), the judge's decision may not stand. See *Khan* v. *Saminni*, 446 Mass. at 91, 96. Compare *S.W.* v. *D.P.*, *post* 901, 903 (2007) (declining to address applicability of G. L. c. 209B to custody dispute involving "State" and foreign nation).[9]

Also absent from the judge's determination are the requisite factual findings and analysis whether the child's elementary schooling in Beijing, agreed on by the parents, constituted a "temporary absence" within the meaning of the statute. The judge did not consider that Massachusetts could remain the child's home State even though the child was attending school in Beijing. Being sent to another jurisdiction for purposes of attending school has been viewed elsewhere as only a "temporary absence," at least under circumstances where it was not intended that the child remain there indefinitely, and where the child returned home during school vacations. See *In re Howard*, 291 Ill. App. 3d 675, 681 (1997).

Careful factual findings and thoughtful analysis of the entire constellation of facts bearing on the issue of the child's home State, including whether her elementary schooling in China amounted to a "temporary absence" within the meaning of the statute, must be undertaken. In this regard, the judge should consider, without limitation, the parents' intentions and understanding regarding the child's elementary education in Beijing and education in the United States thereafter, her return to Massachusetts when school was not in session, the parties' living arrangement before and after their separation (including their commitment to maintaining residency in the United States

---

[9]Unlike the situation in *S.W.* v. *D.P.*, *supra*, here no one has argued that G. L. c. 209B does not apply in circumstances involving a custody dispute where the child has resided both in a "State" and a foreign nation.

for naturalization purposes and their residence in the Westborough home), the wife's (as well as the husband's) visitation and contact with the child during the school year in China, the child's relationship with her sibling, and her United States citizenship.[10]

Having concluded without adequate factual basis that Massachusetts was not the home State for G. L. c. 209B, § 2, purposes, the judge did not then undertake the necessary factual analysis to decide, pursuant to G. L. c. 209B, §§ 7 and 14, whether Massachusetts should exercise such jurisdiction as it had or defer to the Beijing court's subsequent judgment. Under G. L. c. 209B, § 14, even if Massachusetts has home State jurisdiction to address a custody dispute, it may, for reason of comity, lack authority to exercise such jurisdiction in the face of a judgment rendered by a foreign country. "[Section] 14 compels a judge to 'grant due recognition' to custody determinations rendered by a court of a foreign country 'if those determinations have been rendered in substantial conformity with G. L. c. 209B.' " *Khan* v. *Saminni*, 446 Mass. at 95, quoting from *Custody of a Minor (No. 3)*, 392 Mass. 728, 735 (1984).[11] The "substantial conformity" test requires the satisfaction of three procedural components: whether the foreign court (1) had jurisdiction over the parties and the subject matter; (2) applied procedural and substantive law reasonably comparable to ours; and (3) based its order on the "best interests of the child." See *Khan* v. *Saminni*, *supra* at 95, citing *Schiereck* v. *Schiereck*, 14 Mass. App. Ct. 378, 380 (1982). While the parties do not dispute that the Beijing court had jurisdiction, whether the procedural and substantive law of China is "reasonably comparable" to our laws is far from certain on this limited record.[12] Nor is it apparent that the Chinese judgment, a translation

_____

[10]The judge mistakenly found the child, who is exclusively a United States citizen, to be a dual citizen of the United States and of China.

[11]As in *Khan*, this case involves a custody determination by a foreign country that is not a signatory to the Hague Convention on the Civil Aspects of International Child Abduction. See 42 U.S.C. §§ 11601-11610 (2000).

[12]Unlike *Khan* v. *Saminni*, *supra*, absent from the record in this case is a documentary record referencing the procedural and substantive laws of China regarding child custody matters. We are uncertain of, among other things, the

of which we have examined, reflects the "best interests of the child," who is an American, but not a Chinese citizen.[13] Beyond a cursory look at the conclusions set forth in the Beijing court judgment, the judge engaged in no consideration of the procedural and substantive comparability of Chinese law to our own, or of China's willingness to accord due recognition to a custody determination of our courts.[14]

Similarly, the judge did not consider whether exercising jurisdiction would violate the purposes of G. L. c. 209B or constitute an inconvenient forum. See G. L. c. 209B, § 7(*a*)(i), (iii). Nor did the judge address any of the factors set forth in G. L. c. 209B, § 7(*d*), for arriving at her determination.

We also find unpersuasive the other ground for the judge's decision to dismiss the case — that the wife "submitted to" the jurisdiction of the Beijing court, which then entered a judgment adjudicating custody as well as dividing property held in China. The premise of the judge's conclusion that the wife voluntarily invoked the jurisdiction of the Beijing court to decide custody anew is open to question. While the wife submitted herself to the personal jurisdiction of the Beijing court, it is far from clear that her resort to that forum on the issue of custody was anything more than an effort to retrieve the child, based upon the temporary order that she had just obtained from the probate court, and to protect assets in China that might not otherwise be protected by a probate court order. See note 14, *supra.*

4. *Division of marital assets.* Both parties concede that the

---

extent to which Chinese judges are bound by statute and case law to treat the welfare of the minor child as the paramount consideration in determining custody issues. *Khan* v. *Saminni, supra* at 96-97.

[13]The sole paragraph of the Beijing court's decision that bears on the interest of the child recites that (1) the husband takes more care of the child than the mother does, and (2) because the child has lived and studied in China for a long time, she has accommodated herself to the living environment there. On this basis, "in consideration of the rights and interests of the children and the specific conditions of the parents," the Beijing court concluded that "in the principle of the benefit of the child's life and growth, it is appropriate for [the father] to bring up [the child]."

[14]The willingness of China to accord recognition to custody and property determinations of our courts may bear, as well, on the probate judge's alternative conclusion, discussed *infra*, that the wife's filing of a contemporaneous action in Beijing amounted to a voluntary invocation of the jurisdiction of the Beijing court so as to justify dismissal of the Massachusetts action.

probate court has jurisdiction to assign their property interests.[15] See G. L. c. 208, § 34. Having personal jurisdiction over the husband, the probate court may consider property both in and out of the Commonwealth. See *Rice* v. *Rice*, 372 Mass. 398, 399-400 (1977).[16] For this reason, if no other, dismissal of the wife's complaint for division of marital property was improper.

5. *Conclusion.* The judgment of dismissal is vacated, and the case is remanded to the Probate and Family Court for further proceedings consistent with this opinion.

*So ordered.*

---

[15]The husband requested that the probate court divide the assets in the United States.

[16]As noted, the Beijing court specified that its determination was limited to assets in mainland China.