NAZIH MOHAMAD EL CHAAR vs. CLAUDE MOHAMAD CHEHAB.

No. 09-P-860.

Middlesex. April 8, 2010. - December 31, 2010.

Present: DUFFLY, DREBEN, & KAFKER, JJ.

*Child Custody Jurisdiction Act. Jurisdiction,* Custody of child, Probate Court. *Probate Court,* Custody of child. *Divorce and Separation,* Foreign determination as to custody of child.

At the trial of a proceeding to enforce a judgment of a Lebanese court suspending the mother's custody of the parties' daughter, a probate judge properly granted the mother's motion to dismiss under Mass.R.Dom.Rel.P. 41(b)(2), where there was no indication in the evidence before the judge that the Lebanese law governing custody disputes takes into consideration all the relevant factors bearing on the child's best interests as that standard is understood under the laws of the Commonwealth; moreover, the judge did not abuse her discretion in declining to qualify the father's proffered expert witness. [505-507, 508-509] KAFKER, J., concurring.

At a probate proceeding to enforce a judgment of determination of child custody of a foreign court, the judge did not err in deciding the defendant mother's motion to dismiss under Mass.R.Dom.Rel.P. 41(b)(2), without hearing the testimony of an additional witness for the plaintiff father, where that testimony had no relevance to the issue whether the foreign judgment was in substantial conformity with Massachusetts law. [507-508]

CIVIL ACTION commenced in the Middlesex Division of the Probate and Family Court Department on February 12, 2007.

The case was heard by *Dorothy M. Gibson,* J.

*Nicholas M. O'Donnell* for the plaintiff.

*John G. DiPiano* for the defendant.

DREBEN, J. To be enforced, a foreign determination of child custody must be in "substantial conformity" with Massachusetts law. G. L. c. 209B, § 14, inserted by St. 1983, c. 680, § 1. See *Custody of a Minor (No. 3)*, 392 Mass. 728, 735 (1984); *Khan* v. *Saminni*, 446 Mass. 88, 94 (2006); *Schiereck* v. *Schiereck*, 14 Mass. App. Ct. 378, 380 (1982); *Charara* v. *Yatim, ante* 325, 329-330, 332 (2010).

Nazih Mohamad El Chaar, the father of a minor daughter,

appeals from a judgment of the Probate and Family Court dismissing his complaint to enforce a judgment of a Lebanese Sunnite court suspending the mother's custody of their daughter. The judge reasoned that the father failed to produce evidence that the procedural and substantive law applicable to the Lebanese court was in substantial conformity with the laws of the Commonwealth. We affirm.

1. *Background.* The parties, Lebanese citizens, married in Lebanon in 2001, and were living there when their daughter was born on September 16, 2002. When they were divorced in Lebanon in January, 2004, the mother was granted custody of the child with visitation to the father.[1] Thereafter, the mother, seeking to reduce visitation, filed an action in Lebanon that resulted in an order limiting the father's visitation to one day a week.

In May, 2006, the mother left Lebanon with the child without the permission of the father or the Lebanese court. After a brief sojourn in Canada, she settled in Massachusetts. When he could not find the child, the father filed a petition in the Sunnite Muslim Court of Beirut (the Lebanese court) to modify the custody orders.[2] The mother was represented by counsel at these proceedings.

In ruling against the mother's claim for custody, the Lebanese court judge referred to the order allowing the father to visit the child and the mother's removal of the child from Lebanon, circumstances that deprived the father of his visitation rights. Because it appears that under applicable Lebanese law the mother could not legally travel with the child outside Lebanon without the father's authorization, the Lebanese court judge concluded that the mother breached the father's "right" by her travel with the child. A judgment dated September 26, 2006, suspended the mother's right of custody as long as she remained outside Lebanon[3] and ordered her to deliver the child to the father.[4]

---

[1]The father testified that the divorce decree itself did not address the issue of custody because the parties had reached agreement on the issue. He stated that there were no specific rules and regulations with respect to seeing the child, and that in the period immediately following the divorce he saw his daughter three to four times a week.

[2]The probate judge found that "the family court system in Lebanon is a series of ecclesiastical courts recognized by the civil government of Lebanon."

[3]There is also an outstanding arrest warrant in Lebanon for the mother's abduction of the child.

[4]The parties have stipulated that Lebanon is not a signatory to the Hague

The mother appealed. In affirming the judgment, the Lebanese appellate court pointed out that since the mother traveled with her daughter outside the Lebanese territories after the father obtained a judgment giving him the right to see his daughter once a week, the father "has been deprived of the right and the girl was deprived of her right to see her father, and this matter is against her interest[,] which should be taken into consideration . . . before the mother's interest."

On February 12, 2007, the father sought to enforce the Lebanese judgment and filed a complaint for a writ of habeas corpus and to enforce the foreign custody order in the Probate and Family Court. The matter went to trial, and during the proceedings the mother filed a motion to dismiss under Mass.R.Dom.Rel.P. 41(b)(2) (1974).[5] The judge granted the mother's motion.[6]

In declining to defer to the Lebanese custody order, she stated:

"Without evidence as to whether or not the Lebanese proceedings comply with the requirements of G. L. c. 209B, § 14, this court cannot make a finding that the Lebanese proceedings considered the best interests of the child. There was no evidence that 'the procedural and

---

Convention on the Civil Aspects of International Child Abduction. See 42 U.S.C. §§ 11601-11611 (2006).

[5]In relevant part, rule 41(b)(2) provides:

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving h[er] right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them . . . or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff the court shall make findings as provided in Rule 52(a)."

[6]The mother had previously filed a motion to dismiss the action or stay proceedings "predicated upon a theory of preemption by Federal Immigration and Nationality Law." The mother had filed an application for asylum for herself and the child. The judge denied the motion to dismiss but allowed the motion to stay pending resolution of the mother's immigration status. In her findings, the judge stated that the mother and child had obtained a grant of political asylum from the United States. The reasons for the asylum are not in the record before us, and the parties have not briefed any issue concerning the effect, if any, of the grant of asylum on the present proceedings.

substantive law applied by the foreign court [was] reasonably comparable to the law of the Commonwealth.' *Custody of a Minor [(No. 3)]*, 392 Mass. 728, 735 (198[4]), quoting *Schiereck* v. *Schiereck*, 14 Mass. App. Ct. [378,] 380 [(1982)].

". . .

"Upon review of the documents filed in support of these proceedings, this Court can find no indication of what standards were applied by the Lebanese court in reaching its decision to change custody. It appears that the Lebanese decision to modify custody was made based on the sole consideration that Mother left the jurisdiction with the minor child. Such a consideration, standing alone, does not satisfy the requirements of G. L. c. 209B, § 14. There is not even evidence before the Court that the relevant law of Lebanon, such as it has been presented, is reasonably comparable to the relevant law of Massachusetts . . . ."

This appeal followed.

2. *The Lebanese court documents.* It is not clear from the record whether the Lebanese court documents were admitted substantively, as the father contends, or whether they were admitted, as the mother argues, only for a limited purpose. The judge's comments can be read to support both arguments. Postjudgment, the mother filed a motion requesting the court to "settle a specific dispute over contents of the instant appellate appendix." The father wanted to include them; the mother objected. The judge endorsed the motion as follows: "all disputed exhibits shall be attached to the appendix for appeal and identified as disputed exhibits on the characterization of the Court as having been admitted 'de bene.' "[7]

We need not interpret the judge's various rulings, as her findings indicate that she considered the documents in attempting to determine the standards employed by the Lebanese courts.[8] Indeed, the judge's "review of the documents filed in support

---

[7]The word "on" is not clear and could be "or," and the word "characterization" is also not clear.

[8]Examination of the judgment and documents concerning the procedural and substantive laws of Lebanon regarding custody matters was entirely proper in ascertaining whether the standards governing custody were in

of [the] proceedings," including her analysis of the Lebanese judgment, formed the basis for her decision.

3. *Conformity with Massachusetts law.* "[T]he Massachusetts Child Custody Jurisdiction Act [MCCJA], G. L. c. 209B, governs any proceeding in which a custody dispute is presented for resolution." *Khan* v. *Saminni,* 446 Mass. at 91. As the parties do not challenge the Probate and Family Court's jurisdiction under the statute, they properly direct their arguments to G. L. c. 209B, § 14, which provides:

> "To the extent that the legal institutions of other nations have rendered custody determinations in substantial conformity with the provisions of this chapter, the courts of the commonwealth shall grant due recognition to such determinations."

Our cases have set forth three requirements to satisfy the "substantial conformity" test: whether the foreign court (1) had jurisdiction over the parties and the subject matter; (2) applied procedural and substantive law reasonably comparable to our laws[9]; and (3) based its order on a determination of the "best interests of the child." See *Custody of a Minor (No. 3),* 392 Mass. at 735; *Khan* v. *Saminni,* 446 Mass. at 95; *Schiereck* v. *Schiereck,* 14 Mass. App. Ct. at 380 (decided prior to the enactment of G. L. c. 209B); *Akinci-Unal* v. *Unal,* 64 Mass. App. Ct. 212, 220-221 (2005); *Qiuyue Shao* v. *Yue Ma,* 68 Mass. App. Ct. 308, 314 (2007); *Charara* v. *Yatim, ante* at 332. The first requirement is not in issue as the parties do not challenge the jurisdictional authority of the Lebanese family court over the Lebanese proceedings.

In determining the question of "substantial conformity" with Massachusetts law, we look to whether, under the applicable law of Lebanon, the court must consider "the best interests of the child[], as that standard is understood under the laws of the

"substantial conformity" with our laws. See *Khan* v. *Saminni,* 446 Mass. at 96; *Qiuyue Shao* v. *Yue Ma,* 68 Mass. App. Ct. 308, 314-315 & nn.12, 13 (2007).

[9] A court's determination of foreign law is treated as a ruling on a question of law. See Mass.R.Dom.Rel.P. 44.1; Reporter's Notes to Mass.R.Civ.P. 44.1, Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 566-567 (Lexis-Nexis 2009-2010); *Berman* v. *Alexander,* 57 Mass. App. Ct. 181, 189-190 (2003).

Commonwealth." *Charara* v. *Yatim, ante* at 333.[10,11] This is true whether considering an original judgment awarding custody or a modification judgment showing changed circumstances; the guiding principle is always the best interests of the child. See G. L. c. 208, § 28; *Ardizoni* v. *Raymond,* 40 Mass. App. Ct. 734, 738 (1996); *J.F.* v. *J.F.,* 72 Mass. App. Ct. 782, 790 (2008).

Our decisional law has not required a "definitive list of criteria that must be considered in determining what is in a child's best interest[, but certain] constants are revealed in our [cases]." *Charara* v. *Yatim, ante* at 334. Such constants, or factors, include, for example, consideration of which parent has been the primary caretaker of, and formed the strongest bonds with, the child, the need for stability and continuity in the child's life, the decision-making capabilities of each parent to address the child's needs, and the living arrangements and lifestyles of each parent and how such circumstances may affect the child. See *id.* at 334-336. Although the relevance of particular factors may vary from case to case, the above listed factors underscore that in the Commonwealth "the best interests analysis is a child-centered one that focuses on the specific needs and interests of a child and how these might best be met." *Id.* at 336. All relevant factors must be considered. See *Rosenberg* v. *Merida,* 428 Mass. 182, 191 (1998). Even where the foreign law requires a custody determination to make reference to the best interests of the child, it does not necessarily follow that the substantive law applied by the foreign court is reasonably comparable to our own law. See, e.g., *Charara* v. *Yatim, ante* at 333-334, 336.

The father argues that the judge erred in allowing the motion to dismiss because he had established the elements of his case. In the father's view, the Lebanese decisions, which focus on the unauthorized removal of the child from Lebanon, and the judicial

___

[10]The parties proceed, as did the judge, on the assumption that the father had the burden of demonstrating at trial that the substantial conformity test of G. L. c. 209B, § 14, had been satisfied. Compare *Akinci-Unal* v. *Unal,* 64 Mass. App. Ct. at 220-221. For this reason, we need not address the issue. See *Larson* v. *Larson,* 28 Mass. App. Ct. 338, 341 (1990).

[11]In view of the decision we reach with respect to the comparability of "substantive law," it is not necessary to consider whether the procedural laws applicable to the Lebanese family court are reasonably comparable to our laws, although we note that the mother was represented by counsel and presented written argument in the Lebanese proceedings.

submissions made by the mother in Lebanon demonstrate that the best interests of the child were considered by the Lebanese courts.[12]

Under Massachusetts law, while removal of a child without court authorization or parental consent is a relevant consideration, the child is "not chargeable with the misconduct of her mother . . . and ought not to be compelled to suffer for it. Her welfare is the paramount consideration." *Murphy* v. *Murphy*, 380 Mass. 454, 462 (1980), quoting from *Aufiero* v. *Aufiero*, 332 Mass. 149, 153 (1955). See *Custody of a Minor (No. 3)*, 392 Mass. at 736; *Tolos* v. *Tolos*, 11 Mass. App. Ct. 708, 710 (1981). Thus, such removal by a custodial parent (with the inevitable impairment of the father's visitation rights, see G. L. c. 208, § 30) is alone insufficient to warrant modification of the custody order. See *Hernandez* v. *Branciforte*, 55 Mass. App. Ct. 212, 220 (2002). See also *Haas* v. *Puchalski*, 9 Mass. App. Ct. 555, 557 (1980); *Delmolino* v. *Nance*, 14 Mass. App. Ct. 209, 214 (1982). Contrary to the father's contention, there is no indication in the documents put before the probate judge that the Lebanese law governing custody disputes takes into consideration all the relevant factors bearing on the child's best interests as that standard is understood under the laws of the Commonwealth.[13]

4. *Additional issues.* We comment briefly on the father's remain-

---

[12]Contrary to the father's assertion that the applicable standard is that of a motion for a directed verdict, "in passing upon a motion under the second sentence of rule 41(b)(2) a trial judge is not limited to that standard of proof required for a directed verdict . . . [;] rather, the judge is free to weigh the evidence and resolve all questions of credibility, ambiguity, and contradiction in reaching a decision." *Mattoon* v. *Pittsfield*, 56 Mass. App. Ct. 124, 139 (2002), quoting from *Ryan, Elliott & Co.* v. *Leggat, McCall & Werner, Inc.*, 8 Mass. App. Ct. 686, 689 (1979). See Smith & Zobel, Rules Practice § 41.11, at 44 (2d ed. 2007).

[13]The father is not assisted by his reference to the mother's Lebanese appellate papers, which appear to cite to general custody considerations of Lebanese law such as "[s]he must be mature"; "[s]he must be wise"; she must "guard the little child['s] ethics."

The father also claims that the probate judge erred by failing to rule on his request that the court take judicial notice of the United Nations Convention on the Rights of the Child (to which, he asserts, Lebanon is a signatory), which provides, in Part I, art. 3(1), that "[i]n all actions concerning children . . . the best interests of the child shall be a primary consideration." Assuming that this provision is a proper subject of judicial notice, there is nothing therein that would cause a different result in this case.

ing arguments. The father asserts that Mass.R.Dom.Rel.P. 41(b)(2) may be invoked only after a plaintiff has completed the presentation of evidence, see note 5, *supra*, and that he intended to introduce the testimony of an additional witness, Dr. John Baker. Because, however, the judge dismissed the father's petition due to his failure to show the Lebanese proceedings complied with G. L. c. 209B, § 14, she was correct in ruling that Dr. Baker's testimony would not be relevant. Doctor Baker had prepared a report that had been marked as an exhibit. Counsel for the father told the judge that his examination of Dr. Baker would not challenge the report but rather would be directed towards Dr. Baker's observations. As the report did not address the issue of Lebanese law and there is no claim that Dr. Baker was an expert in such law, his testimony had no relevance to the judge's determination of the only issue before her, namely, whether the Lebanese judgment was in "substantial conformity" with Massachusetts law.[14] There was thus no error in deciding the motion prior to Dr. Baker's testimony.

We also reject the father's argument that the judge abused her discretion in not qualifying his proffered expert, an Imam at a mosque in the Boston area, as an expert in Lebanese law. The judge considered carefully the education, training, and experience of the Imam but noted, inter alia, that his credentials and experience were primarily in the field of "counseling couples both in his clerical position and as a mediator or conciliator." Moreover, she pointed out that the Imam had left Lebanon in the early 1980s, although he occasionally traveled back to that country.

The decision to qualify an expert lies within the sound discretion of the judge. See *Commonwealth* v. *Richardson*, 423 Mass. 180, 183 (1996); Brodin & Avery, Massachusetts Evidence § 7.5.2 (8th ed. 2007). While the judge in her discretion could have allowed the proferred expert to testify as to Lebanese law, she was not required to do so.

The father also claims that the judge misapplied hearsay rules by failing to permit him to testify at trial about what was said at the hearings in Lebanon. We need not reach the hearsay question, as the father made no offer of proof, and the record is not clear

---

[14]Even assuming that the judge should not have acted on the motion to dismiss until after Dr. Baker had given his testimony, it is difficult to perceive how the father was prejudiced.

as to what evidence he intended to offer or whether such evidence was relevant to Lebanese substantive law.

A final comment is in order. Cases involving custody disputes present sensitive and often heart-wrenching issues, the resolution of which can seldom satisfy both parties. The judge stated that hers was a difficult decision to make, and she also commented on the father's loving relationship with the child. She correctly noted that the only issue before her was the narrow one of enforcing the Lebanese order and the father was free to seek further visitation rights.

*Judgment of dismissal affirmed.*

Kafker, J. (concurring). I write separately to emphasize that a party seeking to enforce a foreign custody decree of an unfamiliar court system must do a far better job of fulfilling his or her burden of establishing (1) that the party's expert is qualified to opine on the foreign law at issue and (2) that the procedural and substantive law applied to the custody dispute was in substantial conformity with the laws of the Commonwealth. The father's presentation here was inadequate on both grounds. I therefore concur in the result for the following reasons.

Based on the limited presentation of the father in this case, the probate judge did not abuse her discretion in not qualifying the father's expert regarding the family law enforced by the Lebanese Sunnite court. See *Commonwealth* v. *Richardson*, 423 Mass. 180, 183 (1996). Contrast *McLaughlin* v. *Board of Selectmen of Amherst*, 422 Mass. 359, 362 (1996). The proposed expert's experience with legal proceedings in the Lebanese court, as opposed to mediation proceedings associated with the court, was not well developed. The same was true of his knowledge of the substance of the family law applied by the Sunnite court. See Reporters' Notes to Rule 44.1, Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 567 (LexisNexis 2009-2010) ("The trial judge's attention may be directed to the law of another jurisdiction by oral testimony of a *qualified* witness") (emphasis added). Given the difficulty and importance of a correct understanding of an unfamiliar legal system, I discern no error in the judge's decision to require a clearer demonstration of expertise.

In my view, the father's limited submissions also failed to satisfy his burden of proving that the Lebanese Sunnite court decree he sought to enforce was based on procedural and substantive law in substantial conformity with Massachusetts law. See *Akinci-Unal* v. *Unal*, 64 Mass. App. Ct. 212, 221 (2005) (party seeking to enforce foreign divorce judgments did not "demonstrate that either foreign tribunal applied law reasonably comparable to our own"); *Baker* v. *Booz Allen Hamilton, Inc.*, 358 Fed. Appx. 476, 481 (4th Cir. 2009) ("Rule 44.1 provides courts with broad authority to conduct their own independent research to determine foreign law but imposes no duty . . . to do so. . . . Thus, the party claiming foreign law applies carries both the burden of raising the issue that foreign law may apply in an action and the burden of proving foreign law to enable the . . . court to apply it in a particular case"); Bigio *vs*. Coca-Cola Co., U.S. Dist. Ct., No. 97 Civ. 2858 (S.D.N.Y Aug. 23, 2010) (same). See also *Globe Newspaper Co.* v. *Commissioner of Educ.*, 439 Mass. 124, 131 (2003) ("burden of proof ordinarily falls on the party seeking relief"). As the probate judge properly determined upon review of the very limited documentation submitted, "It appears that the Lebanese decision to modify custody was made based on the sole consideration that Mother left the jurisdiction with the minor child. Such a consideration, standing alone, does not satisfy the requirements of G. L. c. 209B, § 14." See *Hernandez* v. *Branciforte*, 55 Mass. App. Ct. 212, 220 (2002) ("a custodial parent's removal of the child from Massachusetts, without the other parent's consent, is alone insufficient to warrant modification of the custody order").